IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**IRA MARCHE & MARCIA BOWDEN, M.D.**                                    **PLAINTIFFS**

**VS.**                                              **CAUSE NO: 3:16-CV-00203-NBB-JMV**

**CITY OF SOUTHAVEN, MISSISSIPPI**
**SERGEANT BRETT LOGAZINO, in his**
**Official and Individual Capacity; OFFICER**
**JEREMY DELANEY, in his Official and**
**Individual Capacity, AND**
**JOHN DOE DEFENDANTS, 1-10**                                           **DEFENDANTS**

**DEFENDANTS' BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, City of Southaven, Mississippi, Sergeant Brett Logazino and Officer Jeremy Delaney, and submit their Brief in Support of their Motion for Summary Judgment.

**INTRODUCTION**

Plaintiffs Ira Marche and Marcia Bowden filed this suit against Southaven and Southaven Police Officers Brett Logazino and Jeremy Delaney alleging multiple civil rights violations in connection with their stop and arrest on September 7, 2015. Plaintiffs bring claims of wrongful arrest, excessive force, First Amendment violations, delay of medical attention, malicious prosecution, and failure to train. (Complaint at ¶67, A-G). As to claims against Southaven, Plaintiff failed to establish an official policy of the city that was a moving force behind any wrong doing alleged against the officers and has no evidence that the officers involved were not adequately trained. All claims against Southaven should be dismissed. In regard to the claims against Officers Logazino and Delaney, both officers are protected by qualified immunity.

Marche was lawfully pulled over for speeding and ultimately arrested appropriately for criminal conduct observed by Officer Delaney after the stop. Further, Plaintiff Bowden's refusal to comply with lawful commands from Officer Delaney after the stop supported her arrest and prosecution. Bowden was found guilty of failing to comply with officers at her initial trial in Southaven Municipal Court. Although Bowden ultimately was able to get the conviction overturned, she has no viable argument that Officer Delaney was not objectively reasonable in bringing the charge. For these reasons, the claims against Logazino and Delaney should be dismissed as well.

## FACTUAL BACKGROUND[1]

On or about September 7, 2015, Plaintiffs, Ira Marche and his wife, Marcia Bowden, M.D., were traveling on Church Road in Southaven, Mississippi. Marche was driving a 2008 black Jaguar with a Tennessee license plate. Bowden was a passenger in the car. Sergeant Logazino observed the vehicle speeding and performed a traffic stop. Marche agrees that he was speeding when he was stopped. (Marche depo. at 37; Marche depo. attached as Ex. 1 to Motion). After Marche pulled over a short distance down the road, Logazino approached Marche's vehicle on the driver's side and asked for his license and registration. (Id. at 36). Marche, during some of the discussions with Logazino, reminded him of a June 2015 citation and hoped that Logazino would remember that he had a driver's license. (Id. at 37). Marche also verbally provided Logazino with his identifying information. (Id. at 38). Logazino went to his police motorcycle to radio dispatch. Initially dispatch was unable to locate information on the Tennessee license of Marche. (Logazino depo. at 58-61; Logazino depo. attached as Ex. 2 to Motion). Dispatch eventually confirmed Marche's license, but it was after Marche had been detained by Officer Delaney. (Id. at 61, 67). Marche at some point exited his vehicle to search the trunk for his

---

[1] The facts are taken from the Complaint and depositions taken in the case.

1021387

license. Marche says he requested and was granted permission to exit the vehicle. (Marche depo. at 38-41). Logazino denies that he gave permission and says that he told Marche to stay in the car, but does acknowledge that, once Marche was out of the vehicle, he allowed him to search his trunk. (Logazino depo. at 69-74). Marche could not locate the license in his trunk and returned to the driver's seat of the car.

At or around this time, Officer Delaney came to the scene as backup. According to Marche, after some additional efforts to find the license as he sat in the car, he then asked if he could exit the car again and search the glove compartment. (Marche depo. at 44). Officer Logazino denies that Marche was granted permission to exit the vehicle a second time to go around and search the glove compartment. (Logazino depo. at 86-86). Even so, Marche exited the vehicle and went to the passenger's side of the car, leaned over Bowden, who was seated in the passenger's seat, and proceeded to check the glove compartment. (Marche depo. at 44; Bowden depo. at 31; Bowden depo. attached as Ex. 3 to Motion). Bowden alleges that while Marche searched the glove compartment, Delaney, who was on the passenger's side of the vehicle, placed his hand on his gun as he stood behind Marche. (Bowden depo. at 32). After seeing Delaney place his hand on or close to his gun, Bowden said "please don't shoot my husband we are law abiding citizens". (Bowden depo. at 31; Delaney depo. at 36-37; Delaney depo. attached as Ex. 4 to Motion). Marche then stated to Bowden, "Honey, be quiet, this is some redneck shit. They will kill us". (Bowden depo. at 32-33; Marche depo. at 45; Delaney depo. at 40-42). All agreed that tension escalated after Marche's comment. According to Plaintiffs, Delaney then placed Marche in handcuffs and detained him. (Marche depo. at 46-50; Delaney depo. at 44-49; Bowden depo. at 33-34). Marche was taken to a police vehicle and placed in the backseat. Marche testified that Delaney was calm until until he placed him the

police car and that he became angry with Bowden after he returned to her. (Marche depo. at 52-53).

After detaining Marche and placing him in the backseat of the police vehicle, Delaney then returned to Plaintiff Bowden who had exited the vehicle. Officer Logazino was talking with Bowden about her license and Bowden says was looking for her license at that time. (Logazino depo. at 104-07). Bowden claims that Delaney began yelling at her about finding her license and grabbed her purse from her to search for the license. (Bowden depo. at 34). Bowden, who had been looking at her phone throughout the process, called attorney Ruby Wharton, the wife of the mayor of Memphis, to confirm Marche's and her good character. (Id. at 36). After getting attorney Wharton on the cell phone, Bowden handed the phone to Delaney. (Id.). Delaney allegedly responded to attorney Wharton that he did not care who she was. (Id.; Delaney depo. at 99-100). Bowden began yelling for help and was generally uncooperative during this time. (Id.). Bowden was then handcuffed and placed under arrest for disorderly conduct - failure to obey. (Delaney depo. at 99-106; Bowden depo. at 39). The charges were primarily for exiting the vehicle without permission.

Another officer, Mike Reed, was called to the scene to transport Bowden to the jail. Bowden was placed in Reed's vehicle for transport to jail. (Bowden depo. at 39-40). Bowden alleges that Delaney put pressure on the handcuffs as she was taken to the police car, but acknowledges that this was only for a brief time. (Id.). Delaney denies that he put any added pressure on the handcuffs as he walked Bowden to the police car. (Delaney depo. at 106-09). At some point, Bowden began experiencing chest pain and shortness of breath. She expressed to the transporting officer that she was asthmatic and felt ill. Delaney went to Bowden's purse and provided her asthma pump. (Delaney depo. 91, 110-12). Delaney says this is the only time he

1021387

4

looked into Bowden's purse. (Id. at 90-91). Both Marche and Bowden were taken to the Southaven Police Department where they were placed in a holding cell. Bowden became ill in the holding cell and began vomiting. (Bowden depo. at 45-46). Delaney called for medical assistance immediately and Bowden was taken to the Desoto Baptist Hospital Emergency room. (Delaney depo. at 112-14). Bowden testified in her deposition that Delaney, although in no hurry, did contact medical personnel to tend to her issues. (Bowden depo. at 46-48; Marche at 72-73). Bowden was treated by EMS at the jail before transport to the hospital. (Bowden at 48-49). She was taken into the emergency room in handcuffs as she was still under arrest for disorderly conduct-failure to comply. (Id.). After being treated at the ER, Bowden was eventually transported back to the Desoto County jail, booked and released in a short period of time. (Id. at 54-56) Marche was also taken to the Desoto County Jail and released after only a short time.

In addition to the speeding ticket and ticket for failing to produce a license, neither of which would have led to an arrest, Marche was charged with public profanity for his comment about "redneck shit". (Delaney depo. at 119; Logazino depo. at 85). The public profanity charge was dropped after police department officials, including the now Chief of Police, learned about the charges and concluded they were not appropriate. (Chief Pirtle depo. at 55-56; Pirtle depo. attached as Ex. 5). Both Pirtle and Delaney agreed that, although the statute says that a public profanity offense must be committed in the presence of two or more people, case law holds that the person doing the speaking and a police officer are not counted in the number. (Pirtle depo. at 55-56; Delaney depo. at 77-81). Delaney relied on the plain reading of the statute that was included in a pocket guide that he kept with him. (Id.). Marche's comment was made only in the presence of Bowden and Delaney, and for that reason, did not meet the requirements of the

statute. Bowden was charged with disorderly conduct--failure to obey. Bowden was found guilty of failing to obey in Southaven Municipal Court. She appealed the conviction to Desoto County Court and her conviction was overturned. (Bowden depo. at 59-61). Delaney confirmed that he was the officer responsible for bringing the criminal charges against Marche and Bowden. (Delaney depo. at 119). Marche was not arrested for the speeding ticket and failure to have his license, but rather was ticketed for those matters. (Logazino depo. at 85).

## ARGUMENT

### I. NO VIABLE CLAIMS AGAINST SOUTHAVEN

#### A. "Official Capacity" Claims are Duplicative of Plaintiffs' Claims Against Southaven.

The Plaintiffs sued Officers Logazino and Delaney in their official and individual capacities. These "official capacity" claims are just another way to plead against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than names, to be treated as a suit against the entity"). Official capacity claims are "*not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original). A plaintiff seeking relief based on official capacity claims must look to the governmental entity for the relief sought. *Id. See also*, *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690 (1978). Southaven is a named defendant in this case. The plaintiffs' official capacity claims against Logazino and Delaney are merely duplicative, and should be dismissed. *Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (holding dismissal of official capacity claims proper because they duplicate claims made against governmental entity); *see also*, *Parker v. Tyson Foods, Inc.,* 2007 WL 2021928 (S.D. Miss. 2007) ("since the plaintiff also names the employer [ ] as a defendant, any Title VII claims against Shewmaker in his official capacity would be merely repetitive").

### B. General Federal Claims Against Southaven Should Be Dismissed.

The Plaintiffs' claims against the Southaven must stem from actions of involved Southaven Police Department ("SPD") officers, Logazino and Delaney. The law is well established, however, that a governmental entity is not liable under 28 U.S.C. §1983 on the theory of respondeat superior for the alleged acts or omissions of its employees. *See*, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dept. of Soc. Services,* 436 U.S. 658, 694 (1978); *Johnson v. Deep East Texas Reg'l. Narcotics Trafficking Task Force*, 379 F.3d 293, 308 (5th Cir. 2004); *Whitt v. Stephens County,* 529 F.3d 278, 283-84 (5th Cir. 2008). "A municipality can be found liable under §1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under §1983." *City of Canton*, 489 U.S. at 385 (citing *Monell v. New York City Dept. of Soc. Services,* 436 U.S. 658, 694-95 (1978)). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under §1983." *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987).

A municipality is almost never liable for an isolated unconstitutional act on the part of the employee; it is liable only for acts directly attributable to it through "some official action or imprimatur." *Peterson v. City of Ft. Worth*, 588 F.3d 838, 847-48 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 568 (5th Cir. 2001)). To establish municipal liability under §1983, a plaintiff must show that (1) an official policy, (2) promulgated by the municipal policy maker, (3) was the moving force behind the violation of the constitutional right. *Piotrowski*, 237 F.3d at 568 (citing *Monell*, 436 U.S. at 694). The plaintiff "must generally demonstrate at least a pattern of similar violations that caused a violation of constitutional rights." *Pernell v. City of Columbus*, 2010 WL 1737639 *5 (N.D. Miss. 2010) (quoting

*Thompson v. Upshur Co., Texas*, 245 F.3d 447, 449 (5th Cir. 2001)). An isolated incident is not sufficient to show that a policy or custom exists. *Id.* (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)). The policy must be "persistent, widespread, common, and well-settled." *Brown v. Callahan*, 623 F.3d 249, 256 (5th Cir. 2010).

The Fifth Circuit has defined "official policy" as:

(1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

(2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy. "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy."

*Mason v. Lafayette City-Parish Consolidated Government,* 806 F.3d 268, 279-82 (5th Cir. 2015) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984)).

A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policy making authority' over the subject matter of the pending policy." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989). Therefore, the plaintiff must show that the policy was promulgated by the municipality's policy maker.

As the court in *Mason* explained, the "moving force" prong requires the plaintiff to make two showings: causation and culpability. *Mason*, 806 F.3d at 280 (citing *Board of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff must show a "direct causal connection . . . between the policy and the alleged constitutional deprivation." *Id.* (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1982)). "The 'moving force' inquiry imposes a causation standard higher than 'but for' causation." *Id.* "Under the culpability requirement, if the policy is facially lawful, a plaintiff must also show that the municipality 'promulgated [the

policy] with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result.'" *Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d at 567, 569)). Even a showing of heightened negligence is insufficient to show the deliberate indifference needed to prove municipal liability. *Piotrowski*, 237 F.3d at 529 (citing *Brown*, 520 U.S. at 407).

Plaintiffs cite to no policy statement, ordinance, regulation or decision that was officially adopted and promulgated by Southaven's lawmaking officers that they claim is unconstitutional and was a moving force behind the violation of any of the Plaintiffs' rights. Plaintiffs' chief complaints as reflected through the course of discovery focus on alleged failures of specific individual SPD officers to have followed adopted SPD policies in regard to their arrest. This falls far short of the requirements to assess liability against Southaven as there is no proof of anything done by its policy makers, much less any actions perpetrated with deliberate indifference, resulting in a violation of the Plaintiffs' constitutional rights. As important, there is no evidence of a persistent, widespread practice by City officials or employees that is so common and well settled to constitute a custom that fairly represents municipal policy being the "moving force" behind any alleged violation of the Plaintiffs' constitutional rights. Plaintiffs' claims of constitutional violations as to Southaven fail completely.

### C. Failure to Properly Train and Supervise.

Plaintiffs allege that Southaven failed to train and supervise officers in this case. (Complaint at ¶'s 200-212). This claim is general in nature and fails to specify what training was needed and why or how any such training provided by the SPD was deficient. To establish a municipality's failure to train, a plaintiff must show "(1) inadequate training procedures; (2) that inadequate training caused the task force officer's to [wrongfully arrest and use excessive force]; and (3) the deliberate indifference of municipal policy makers." *Quinn v. Guerrero*, 2017 U.S.

App. LEXIS, 12290, 23-24 (5th Cir. 2017) (citing *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002)). "The inadequacy of [the] training must be closely related to the injury." *Id.* Defects in a particular training program must be alleged specifically. *Roberts v. City of Shreveport*, 397 F.3d 287, 298 (5th Cir. 2005). *See also*, *Zimmerman v. Cutler*, 657 Fed. Appx. 340, 347-48 (5th Cir. 2016) (dismissing plaintiff's failure to train cause of action because the plaintiff "failed to adduce any evidence of Department training procedures -- inadequate or otherwise.")

Any claim based on a failure to train and supervise the involved officers fails for any number of reasons. First, each officer testified at length about their significant training in all aspects of law enforcement. (Logazino depo. at 17-27; Delaney depo. at 11-13). Both officers were well trained to do their jobs. Going further, the plaintiffs fail to articulate what training was not provided to the involved officers or how any prescribed training resulted in a constitutional deprivation of either Marche or Bowden, much less that Southaven was deliberately indifferent in regard to training protocol. There is absolutely no evidence that either SPD officer involved was inadequately trained -- none whatsoever. There is no basis for a claim against Southaven this regard. Southaven should be dismissed as a Defendant in this case.

**II.    OFFICERS LOGAZINO AND DELANEY PROTECTED BY QUALIFIED IMMUNITY**

Qualified immunity shields governmental officials from civil damages liability unless the official violated a statutory constitutional right that was clearly established at the time of the challenged conduct. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Once a defendant raises the defense of qualified immunity, it becomes the plaintiff's burden to show that it does not apply. *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005). In general, the relevant, dispositive inquiry in determining whether a right is clearly

1021387

established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Lytle v. Bexar Cnty, Texas*, 560 F.3d 404, 410 (5th Cir. 2009).

To determine if an individual is entitled to qualified immunity, the court applies a two-step analysis. The first step in the inquiry of the defendant's claim of qualified immunity is whether the plaintiff has alleged the violation of a clearly established right. *Siegert v. Gilley*, 500 U.S. 266 (1991). This inquiry necessarily questions whether or not the officer acted reasonably under civil law and the circumstances in which he was confronted. *Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir. 1993). If the defendant's conduct did not violate plaintiff's constitutional rights under the first prong, he is entitled to qualified immunity protection. *Blackwell v. Laque*, 2008 WL 1848119 at *2 (5th Cir. 2008).

The second prong requires the court to consider:

> Whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citations omitted). For the purposes of this summary judgment motion, defendants Logazino and Delaney concede that Plaintiffs are protected under the Fourth Amendment from wrongful arrest, use of excessive force and a officer's failure to provide medical care. Even though those rights may be clearly established, Plaintiffs in this case has failed to provide any evidence that officer conduct was objectively unreasonable.

### A. Logazino Not Involved In Arrest Of Marche And Bowden And His Actions In The Case Were Objectively Reasonable.

All claims of Plaintiffs in this case arise from their arrests. Both Officers Logazino and Delaney confirmed in their depositions that Logazino was not responsible for the arrest of either

1021387

11

of the Plaintiffs. Logazino was the officer that pulled Marche over for speeding. Marche acknowledges that he was speeding and that he was appropriately pulled over. (Marche depo. at 37). Logazino's testimony was that Marche would not have been arrested for traffic ticket violations once dispatch confirmed he had a license. The arrests of both Marche and Bowden were effectuated by Officer Delaney. (Logazino depo. at 85, 129-31; Delaney depo. at 119). Given that Marche admits that he was speeding, there is no question that Logazino's decision to initially stop Marche was appropriate. Because Logazino was not involved in the decisions to arrest either Marche or Bowden, he cannot be liable for the claims associated with that arrest.

Plaintiffs also appear to claim that Logazino should be individually liable because he failed to intervene with the arrest charges. (Complaint at ¶¶ 129-142; ¶¶ 188-199). Logazino testified in his deposition that nothing that he had observed from Delaney created concerns that the detentions of Marche and Bowden were illegal. (Logazino depo. at 102-103). As an example, Logazino had observed Marche exit his vehicle on at least two occasions when he had instructed him to stay in the vehicle and he had observed Bowden exit the vehicle after Marche was detained even though Delaney had instructed her to stay in the car while he walked Marche to the police car. Although both Marche and Bowden now say they had permission to exit the vehicle, Logazino had no reason to question the actions of Delaney when all of these events were occurring. Logazino was not exactly sure what the specific charges against Marche or Bowden were and he had no reason to intervene in the process. In this case, Marche was not arrested for anything to do with the traffic charges and, given the fact that Logazino's role in this process was primarily related to the traffic stop, he is protected by qualified immunity.

    **B. Officer Delaney Protected By Qualified Immunity On All Claims Of Marche And Bowden.**

      **1. Defendant Delaney did not Wrongfully Arrest Marche or**

**Bowden.**

An arrest is unlawful unless it is supported by probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect has committed or was committing an offense. Id. at p. 402 (citation omitted). A police officer has qualified immunity if he reasonably but mistakenly concludes that probable cause is present. *Massey v. Wharton*, 477 F. App'x 256, 260 (5th Cir. 2012). There must not even arguably be probable cause for the arrest for immunity to be lost. *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001).

*Marche*

Delaney arrested Marche for public profanity. Marche commented as things were escalating while he searched his glove compartment for his license that this was "redneck shit by some Mississippi cops" or words to that effect. After Delaney heard the comment, he believed that it was important to separate Marche and Bowden to hopefully calm the situation. (Delaney depo. at 40-47). He initially handcuffed Marche and detained him by placing him in the back of his police car. At some point later, he made the decision to charge Marche with public profanity. Delaney had previously concluded that the comments were an arrestable offense. He later learned during the SPD's internal investigation into the arrest that his reading of the statute on public profanity was in error and that the statute, although not specifically stating so, required that the profanity be made in the presence of two or more persons, not including an officer. (Delaney depo. at 81, 119). Even though Delaney's charge was inappropriate, the information he had at the time from the pocket guide that he reviewed, supported the arrest. The pocket guide did not include any reference to Mississippi caselaw wherein courts have held that the two or

more person requirement does not include a police officer. Given that Delaney made a reasonable mistake, he is protected by qualified immunity on Marche's charge of wrongful arrest.

### *Bowden*

Delaney charged Bowden with disorderly conduct - failure to obey. These charges primarily because Bowden had exited the vehicle while he was taking Marche to the police car. In addition to exiting the vehicle, Bowden began yelling at by passers to help her. Delaney was instructing her to calm down and allow him to explain what was going on. Bowden testified that she had permission to leave the vehicle. In some cases this may create a question of fact on the probable cause issue; however, when Bowden's case was initially heard in the Southaven Municipal Court, she was found guilty of disorderly conduct - failure to obey. She eventually appealed the conviction and it was overturned in a Desoto County court. Even so, there is a body of caselaw that holds that "it is well settled that if facts supporting an arrest are placed before an intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party. *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994). In this case, the charges against Bowden were not presented to a magistrate or grand jury, but she had her initial day in court before a Southaven municipal judge. That municipal judge determined that she was guilty of failing to obey officer commands. Given the guilty finding by a municipal court judge, Delaney was objectively reasonable when he decided to arrest Bowden. For that reason, he is protected by qualified immunity for that reason.

### 2. Delaney Protected By Qualified Immunity On Excessive Force Claim.

In order to withstand a Motion for Summary Judgment for Qualified Immunity in a case brought pursuant to Section 1983 for excessive force, the Plaintiffs must present credible proof

of "(1) an injury; (2) which resulted directly and only from the use of force that was clearly excessive to the need; and (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). Here, neither Marche nor Bowden has sufficient evidence of excessive force.

Although Marche alleges excessive force due to the way Delaney handled him during his detention and arrest, he testified that Delaney was calm with him as if he was an "altar boy" when he detained him and placed him in the police car. (Marche depo. at 52-53). He provided no evidence of excessive conduct by Delaney during his arrest and presented nothing to establish any injury resulted from Delaney's actions. The courts have explained that not only must some injury be shown by the Plaintiff but it must also not be "so slight" as to be considered *de minimis*. *Flores v. City of Palacios*, 381 F.3d 391, 397-98 (5th Cir. 2004). ("Certain injuries are so slight that they will never satisfy the injury element"). Marche has not provided evidence of excessive force or injury.

As to Bowden's claim, she says that Delaney put pressure on the handcuffs as he walked her to the police car after her arrest. She provided nothing to indicate that she suffered injury. Bowden was never treated for any injury regarding use of excessive force. Bowden became ill and was treated at the hospital, but that treatment was not because of the way Delaney handcuffed or put pressure on her handcuffs. Her sole contention that Delaney applied pressure on the handcuffs without more does not support an excessive force claim. *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001). Neither Marche nor Bowden can support an excessive force claim against Delaney.

### 3. First Amendment - Marche

Marche claims that he was arrested in violation of his First Amendment rights. His claim

on that point is that Officer Delaney arrested him based on comments that he directed to his wife in the privacy of his vehicle. He is referring to his comment that "this is some redneck shit from some Mississippi cops." In order to establish a First Amendment violation, the plaintiff must prove that his speech involved a matter of public concern. *Ayers v. City of Holly Springs, Mississippi*, 2006 U.S. Dist. Lex 74811 (N.D. Miss. 2006)(citing *Connick v. Myers*, 461 U.S. 138, 147 (1983). The comments referenced above allegedly made by Marche to his wife as he was searching through his glove compartment are not matters of public concern. For that reason, Marche has no legal basis to pursue a First Amendment claim.

### 4. Bowden's -- Medical Care Claim

Plaintiff Bowden claims that the defendants violated her Fourteenth Amendment rights by acting with deliberate indifference in failing to provide her medical treatment after her arrest. In *Mason v. Lafayette City--Parish Consolidated Government*, 806 F.3d 268 (5th Cir. 2015) the United States Court of Appeals for the Fifth Circuit articulated the plaintiff's burden in proving a Fourteenth Amendment violation to render medical care as follows:

> "The *Due Process Clause* . . . require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." (citing *Revere v. Mass. General Hosp.*, 463 U.S. 239, 244 (1983). "[T]he plaintiff must show that an officer acted with subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." (citing *Hill v. Carroll Co.*, 587 F.3d 230, 238 (5th Cir. 2009). Deliberate indifference is "an extremely high standard to meet." (citing *United States v. Gonzalez,* 436 F.3d 560, 574-75 (5th Cir. 2006). A plaintiff "must show that the officials 'refuse to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" (citing *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

806 F.3d at 279.

In the Complaint, Bowden claims that Defendant officers delayed needed medical

treatment to her at the jail. (Complaint at ¶'s 169-175). However, both Marche and Bowden testified in their depositions that after requesting medical care, medical persons were contacted, Bowden was attended to and then transported to the local emergency room. (Bowden depo. at 45-47; Marche depo. at 70-73). There is no evidence that anything done or not done by any of these officers showed a deliberate indifference or evinces a wanton disregard for Bowden's medical needs.

### 5. Malicious Prosecution

Both Marche and Bowden bring claims of malicious prosection. The elements for a Section 1983 claim of malicious prosecution are:

1. A criminal proceeding commenced against the plaintiff;

2. The prosecution was caused by the defendant or with his aide;

3. The proceeding terminated in plaintiff's favor;

4. The plaintiff was innocent;

5. The defendant acted without probable cause;

6. The defendant acted with malice; and

7. The proceeding damaged plaintiff.

*Pete v. Metcalfe*, 8 Fd.3d 214, 219 (5th Cir. 1993); *Alicia v. Grenada County*, 1997 WL 206767 at *9 (N.D. Miss. 1997). In order to prevail, the plaintiff must prove each and every element. *Swenson v. Culberson County*, 925 F.Supp. 478, 485 (W.D. Tex. 1996). As to Marche, as soon as the police department investigated the public profanity charges and learned that it did not meet the elements of the charge, the police department contacted the prosecutor's office and recommended dismissal of the charge. (Pirtle depo. at 55-56). Under these circumstances, Marche cannot establish the elements of a malicious prosecution.

In regard to Bowden, she was convicted on the charge of disorderly conduct in municipal court. That alone establishes that there was a reasonable basis for the charge. As important, she offered nothing to show malicious conduct on the part of Delaney. Although she eventually had her conviction overturned, she has no factual support for her malicious prosecution claim.

### III. EXEMPLARY DAMAGES NOT RECOVERABLE AGAINST OFFICERS

As to the individual defendants, they are entitled, as stated above to qualified immunity. Therefore, no damages of any kind should be awarded. Even the Plaintiffs could get by summary judgment as to 1983 liability, neither have any basis for a claim of exemplary damages against the individual officers. As has been held in the 5th Circuit:

> *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), stands for the proposition that a showing of either willful misconduct or conscious indifference to the rights of others is required for punitive damages to be assessed under section 1983, and that mere gross negligence is not sufficient. *See id*. 103 S.Ct. at 1633, 1637. As applied to a case such as this, conscious indifference connotes a requirement that the defendant, if not actually aware that his conduct is unlawful, must at least be conscious that it may well be so and indifferent whether it is or not. … *See also id*. 103 S.Ct. at 1635, *citing* RESTATEMENT (SECOND) OF TORTS, § 908(2). Comment b thereto provides in pertinent part: "[P]unitive damages ... can be awarded only for conduct ... involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others." (Emphasis added.)

*Creamer v. Porter,* 754 F.2d 1311 (5th Cir. 1985). Officers Logazino and Delaney submit that summary judgment is proper as to all claims and that there are no genuine issues of any material fact, but even if there were, nothing has been shown to indicate any issue of any outrageous conduct or reckless indifference to the Plaintiff's rights by officers in this case.

### CONCLUSION

For all the reasons discussed above and any that the Court deems appropriate, Plaintiffs' claims against Defendants City of Southaven, Mississippi, Sergeant Brett Logazino and Officer

1021387

Jeremy Delaney should be dismissed as a matter of law.

    This the 15th day of August, 2017.

s/<u>Berkley N. Huskison (MSB #9582)</u>
*Attorney for Defendants City of Southaven,*
*Mississippi, Brett Logazino and Jeremy*
*Delaney*

Of Counsel

Mitchell, McNutt & Sams, P.A.
Attorneys at Law
Post Office Box 1366
Columbus, Mississippi  39703-1366
(662) 328-2316 - phone
(662) 328-8035 - facsimile
bhuskison@mitchellmcnutt.com - email

1021387

## CERTIFICATE OF SERVICE

      I hereby certify that on August 15, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system and forwarded such filing via United States Postal Service or ECF notification to the following:

John Keith Perry, Jr., Esquire
Victoria V. Washington, Esquire
PERRYGRIFFIN, P.C.
5699 Getwell Road
Building G, Suite 5
Southaven, MS 38672
*jkp@perrygriffin.com*
*vw@perrygriffin.com*

      This the 15th day of August, 2017.

                                                     s/<u>Berkley N. Huskison</u>

Case: 3:16-cv-00203-NBB-JMV Doc #: 31 Filed: 08/15/17 20 of 20 PageID #: 310